■ MICHELLE STONE, Appellant-Respondent, v STERLING DRUG, INC., Defendant and Third-Party Plaintiff-Respondent-Appellant; C. R. BARD, INC., U. S. CATHETER DIVISION, et al., Third-Party Defendants-Respondents. — Yesawich, Jr., J. Cross appeals from an order of the Supreme Court at Trial Term (Mercure, J.), entered April 6, 1984 in Warren County, which, *inter alia,* granted a motion by defendant and third-party defendant C. R. Bard, Inc., U. S. Catheter Division to set aside a verdict in favor of plaintiff and ordered a new trial.

The accident underlying this negligence action occurred on October 21, 1977. Plaintiff, a 23 year old, employed in a janitorial position by U. S. Catheter Institute (USCI), was instructed by her supervisor to remove a green stain from a sink in the ladies bathroom. According to plaintiff, the only available cleanser was Vani-Sol, a highly toxic industrial-strength acid produced by defendant. As plaintiff attempted to pour some Vani-Sol onto a cloth, the bottle slipped from its holder, splashing the liquid on the back of her right hand. She was not wearing protective gloves because none were provided by her employer, despite her previous request. Plaintiff immediately blotted the liquid with her sleeve and then irrigated the area with water for approximately five minutes. Because she did not believe the injury was sufficiently serious to merit medical attention, she proceeded with her duties.

Four days later, the pain was such that she sought treatment from a dermatologist. Although he initially diagnosed a first degree burn, a third examination performed on November 15, 1977 disclosed that plaintiff had sustained a second or third degree chemical burn. He referred plaintiff to a plastic surgeon who, the next day, performed an immediate skin graft. Plaintiff was discharged from the hospital the following morning and returned to work in January 1978. She remained under this surgeon's care until May 1978, at which time plaintiff, dissatisfied with the progress of the skin graft and still suffering pain as a result, retained the services of another plastic surgeon.

The continued instability of the first skin graft, occasioned apparently by irritation caused by friction or picking, necessitated a second skin graft in January of 1979. After 17 days of hospitalization and several months of domestic convalescence marked by severe pain, plaintiff returned to work in May 1979. The second skin graft not only preserved a full range of motion in plaintiff's hand, but also yielded an excellent cosmetic result, as only a minor scar remained on the hand.

Plaintiff thereafter commenced suit against the dermatologist and the first plastic surgeon for medical malpractice and against defendant for breach of warranty based on a failure to warn through adequate first-aid instructions. Defendant cross-claimed against the physicians and impleaded USCI as a third-party defendant. In midtrial and over the objections of defendant and USCI, the trial court, with appropriate instructions to the jury, permitted plaintiff to discontinue, with prejudice, her actions against the doctors, as well as defendant's cross claims.

The case was given to the jury for resolution in three stages. Initially, the jury affirmatively and unanimously answered the

following question put to it in writing by the trial court: "Did the Plaintiff * * * either prior to the incident in question or immediately after getting the Vani-Sol on her hand, read the first aid instructions for external contact which were contained on the label?" The jury then withdrew to apportion liability between plaintiff and the remaining parties, collectively, and to determine plaintiff's total damages. In addition to specifically finding plaintiff free of contributory negligence with defendant and USCI 100% at fault, the jury voted 5 to 1 to award compensatory damages in the amount of "$250,000 plus future and past medical costs, plus legal costs on her part, plus any taxes she may incur as a result of this settlement". In response to a final question, the jury, after deliberating still further, assigned 70% of the liability to USCI and 30% to defendant. The trial court thereafter denied plaintiff's motion to increase the ad damnum clause from $75,000 to $250,000 and to strike the excess verbiage in the verdict, denied the motion of defendant and USCI for judgment notwithstanding the verdict, and granted the motion of defendant and USCI to set aside the verdict as excessive and for a trial de novo. These cross appeals ensued.

With respect to the claim that plaintiff did not establish a prima facie case of failure to warn, thus entitling it to judgment notwithstanding the verdict, defendant points to its compliance with Federal regulatory standards for labeling the Vani-Sol as evidence that its first-aid instructions sufficed. As the trial court herein observed, although "a defendant's compliance with a statute 'is some evidence of * * * due care' * * * it does not preclude a conclusion that he was negligent" (*Sherman v Lowenstein & Sons,* 28 AD2d 922). It is well-established New York law that a manufacturer is obliged to provide adequate warnings regarding the use of a product (*Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 106-107; *Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471, 478-479) and that the adequacy of those warnings in a products liability case based on a failure to warn is, usually, a factual question to be determined at trial (*see, Buley v Rexnord Process Mach. Div.,* 105 AD2d 965; *Maher v Atlas Tr. Mix Corp.,* 104 AD2d 591).

A fair interpretation of the evidence justifies the jury's finding that defendant's first-aid instructions were inadequate. The Vani-Sol label advised one coming in contact with the product to "[w]ipe off the acid gently, immediately flood the surface with water, using soap freely, then cover with moist magnesia or baking soda". Plaintiff presented expert testimony that these instructions were woefully inadequate and, in fact, aggravated plaintiff's injury because they neglected to state that a minimum period for irrigation with water of at least 15 minutes was

required. Furthermore, the instructions were internally incongruous, for they prescribed a 15-minute washing period for injury to a person's eyes but no irrigation time frame in the event that the acid made contact with a person's skin. We agree with the trial court that the jury's conclusion that defendant's first-aid instructions were indeed deficient and that the deficiency contributed to plaintiff's injury is readily supportable on this record.

Defendant's assertion that plaintiff failed to prove that she read the emergency instructions is equally unconvincing. Not only did plaintiff testify that on several occasions she skimmed those instructions, but she even followed the first two steps set forth on the label, to wit: wiping off the acid and then flushing the contacted area with water. On such evidence, the jury's conclusion that she read the instructions cannot be reckoned as unreasonable.

As for the apportionment of 70% liability to USCI and 30% liability to defendant, the record reveals that, in addition to neither instructing plaintiff in the use of Vani-Sol nor providing her with an applicator, her supervisor neglected her request for protective rubber gloves. Had USCI satisfied that reasonable, cautionary request, it is conceivable that no injury would have occurred. Moreover, USCI's negligence was exacerbated by evidence that it neglected to stock any first-aid supplies. On such proof, we are unable to say that the jury could not fairly apportion more fault to USCI than defendant, and do so in the percentages reached.

Nor are we convinced that the jury disregarded the trial court's directions in arriving at its verdict to the extent that all of the jury's determinations must be considered to be tainted. Initially, the trial court charged the jury to render a verdict in a sum of money which would justly and fairly compensate plaintiff. Identified as items of recoverable damages were compensation for conscious pain and suffering to date, permanent injuries, reasonable medical expenditures and lost earnings. After deliberating for a time, the jury inquired of the court how they were to arrive at total damages, to which the court responded: "The purpose of an award of damages is to restore the aggrieved party to the position which she held prior to injury. This is accomplished by awarding a sum of money which compensates her for her actual loss sustained as well as those items which in all probability she will sustain in the future." No objection was voiced to this advice.

The verbiage in the verdict awarding plaintiff counsel fees, future medical expenses and taxes does not, in our view, amount

to inattention to the trial court's instructions since its charge, though not required to do so, did not expressly exclude those items from consideration. In reality, the direction that the jury compensate plaintiff for the loss she actually sustained and probable future items of damage could reasonably have bred such verbiage.

In any event, though cognizant of the pain and suffering plaintiff endured during the years involved, we do not believe that the trial court, which is in the best position to rule on the propriety of the verdict (*see, Stewart v West Bradford Corp.*, 88 AD2d 1100), acted improvidently when it decided that the monetary amount awarded was excessive. The special damages approximated $8,500, of which $4,000 represented medical expenses, and the balance lost wages. As for the injury itself, there is a full range of motion in the fingers and hand, the graft is cosmetically satisfactory, there is no medical evidence that plaintiff will require any future medical treatment or that the condition of her hand, which the trial court viewed, presently produces pain or will do so in the future, or that it is disabling in any respect.

The question remaining then is whether there is a need for a trial de novo rather than one limited to the issue of damages only. Where determination of liability and damages are intertwined, a new trial on all the issues is appropriate (*see*, CPLR 4404; *Figliomeni v Board of Educ.*, 38 NY2d 178, 182). Here, the proof necessary to establish liability is entirely distinct from that needed to fix damages. USCI's liability derives from its failure to instruct plaintiff as to the use of Vani-Sol, to furnish her with protective gloves and an applicator which came with the Vani-Sol, and to have adequate first aid available on its premises. Defendant's liability turned on whether it failed to provide sufficient first-aid instructions. And the proof respecting plaintiff's freedom from contributory negligence concerned itself with whether she was using Vani-Sol at the time of the occurrence for a purpose and in the manner intended. Manifestly, the proof that was called for and produced to demonstrate liability is not so intimately connected with plaintiff's evidence of damages, which consisted of showing medical costs and lost wages, coupled with a recitation of her injuries, pain and suffering, as to make a new trial on all the issues unavoidable.

Inasmuch as this matter is being remitted for a new trial limited solely to the issue of damages, we express no opinion on the question of whether plaintiff's ad damnum clause should be increased and, in an exercise of our discretion, leave that issue, if it is again presented, to the nisi prius court to resolve.

Order modified, on the law, with costs to abide the event, by reversing so much thereof as directed a new trial de novo; matter remitted to Trial Term for a new trial on the issue of damages only; and, as so modified, affirmed. Kane, J. P., Main, Mikoll, Yesawich, Jr. and Harvey, JJ., concur.