**Maura Ann MURPHY, Plaintiff,**

v.

**NISSAN MOTOR CORPORATION IN U.S.A., Defendant.**

No. 84CV4556.

United States District Court, E.D. New York.

Jan. 7, 1987.

Richard McGowan, Paul D. Rheingold, P.C., New York City, for plaintiff.

James P. Barrett, Deborah M. Reyher, Simpson Thacher & Bartlett, New York City, for defendant.

## MEMORANDUM AND ORDER

KORMAN, District Judge.

Plaintiff, Maura Ann Murphy, was a passenger in a 1983 Nissan Sentra automobile which crashed head-on into a tree, leaving her a paraplegic. At the time of the accident plaintiff's seat was fully reclined and she was not wearing a seat belt. In this action against Nissan Motor Corporation In U.S.A. ("Nissan"), in which jurisdiction is predicated on diversity of citizenship, plaintiff alleges, inter alia, that the automobile manufactured by Nissan was a defectively designed product because the automobile's seat belts were ineffective when the passenger seat was in a fully reclined position. Plaintiff claims that it was unreasonably dangerous for defendant not to take safety measures in addition to providing seat belts, such as eliminating reclining seats, providing audible warnings when the automobile was operated with the seats reclined or providing airbags.

Plaintiff's interrogatories sought discovery of, inter alia, information relating to her claim that airbags were a design alternative available to defendant. After defendant objected to these interrogatories, plaintiff sought an order from the Magistrate to compel discovery. Defendant then moved for partial summary judgment on what it characterizes as plaintiff's "airbag claim." Although labeled as a motion for partial summary judgment, defendant's motion may be more accurately characterized as a motion *in limine* to preclude plaintiff from relying on the failure of defendant to install air bags on its 1983 Sentra.

Defendant advances two principal arguments in support of its motion. First, defendant argues that plaintiff's airbag claim is both expressly and impliedly preempted by the National Traffic and Motor Vehicle Safety Act of 1966. Alternatively, defendant argues that plaintiff's airbag claim fails to state a cause of action under New York law.

Defendant's motion is denied. Plaintiff's claim is not preempted because the provisions of New York common law invoked by plaintiff are neither expressly preempted by federal law nor in conflict with federal law. Further, plaintiff's claim states a cause of action under well established principles of New York products liability law.

I. *The Statutory and Regulatory Framework*

In 1966, acting on "the conviction ... that the soaring rate of death and debilitation on the nation's highways is not inexorable," S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Ad. News 2709, Congress enacted the National Traffic and Motor Vehicle Safety Act of 1966 (the "Act"). The Act attempts to increase automotive safety in a number of ways. First, the Act provides for research, testing and training in traffic safety. 15 U.S.C. § 1395. Second, the Act requires manufacturers to notify the public of auto-

motive defects relating to safety and to repair such defects. 15 U.S.C. §§ 1411–19. Third, the Act provides for the promulgation of "Federal motor vehicle safety standards" by the Department of Transportation and prohibits the manufacture for sale or sale of motor vehicle equipment that fails to comply with such standards. 15 U.S.C. §§ 1392, 1394, 1396, 1397. Enforcement is provided for by means of civil penalties and actions for injuctive relief by the United States. 15 U.S.C. §§ 1398–99. To aid enforcement manufacturers are required to supply the Department of Transportation with certain information and the Department is authorized to undertake investigations. 15 U.S.C. § 1401.

In 1984 the Department of Transportation promulgated a safety standard relating to passenger restraints pursuant to 15 U.S.C. § 1392. 49 Fed.Reg. 28,962 (July 17, 1984), *codified at* 49 C.F.R. § 571.208 (1985) ("standard 208").[1] The provisions of standard 208 applicable to 1983 model year automobiles give manufacturers three options for complying with minimum safety standards for passenger restraints. First, manufacturers may provide passive restraints, such as airbags, for the front outside seats in conjunction with seat belts for the front center and rear seats. 49 C.F.R. § 571.208.S4.1.2.1 (1985). Second, manufacturers may utilize a combination of passive restraints, detachable shoulder harnesses, lap belts and warning systems. 49 C.F.R. § 571.208.S4.1.2.2 (1985). Third, manufacturers may provide a combination of lap belts, nondetachable shoulder harnesses and warning systems. 49 C.F.R. § 571.208.S4.1.2.3 (1985).

Standard 208 provides for the gradual phasing in of the requirement of passive restraints in passenger automobiles. 49 C.F.R. § 571.208.S4.1.3 (1985). Passenger automobiles manufactured after September 1, 1989 are required to have passive restraints, 49 C.F.R. § 571.208.S4.1.4 (1985), unless two thirds of the United States' population is subject to state mandatory

---

1. For a discussion of the prior history of standard 208, see *State Farm Mutual Automobile Insurance Co. v. Dole,* 802 F.2d 474, 477–78 (D.C.Cir.1986).

seat belt laws by April 1, 1989.   49 C.F.R. § 571.208.S4.1.5 (1985).

## II. Defendant's Express Preemption Argument

Defendant's express preemption argument is premised on 15 U.S.C. § 1392(d), which provides in pertinent part:

Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard....

Defendant argues that plaintiff's airbag claim is a "nonidentical state safety standard" because it requires defendant to install airbags in order to avoid civil liablity whereas standard 208 does not require manufacturers to install airbags.  Because it is a safety standard which is not identical to standard 208, defendant argues, plaintiff's cause of action is expressly preempted by section 1392(d).

The Court of Appeals for the Second Circuit has construed section 1392(d) to preempt

state regulation of an item of motor vehicle equipment ... only if the following factors appear in combination: (1) a federal standard in effect which covers that item of equipment; (2) a state safety standard ... for the item which is not identical to the federal standard; and (3) application of the state and federal regulations to "the same aspect of performance" of the item of equipment. *Chrysler Corp. v. Tofany,* 419 F.2d 499, 506 (2d Cir.1969).

Restated in terms of the formulation in *Tofany,*[2] defendant's position is that (1)

federal standard 208 regulates passenger restraints (the "item of equipment") and does not require the installation of airbags; (2) state tort law regulates passenger restraints in a nonidentical fashion by requiring defendant to install airbags to avoid civil liability; and (3) both state and federal law regulate the same aspect of performance.

■ The flaw in defendant's position is the assumption that the benefits of New York law plaintiff seeks to invoke regulate or require passenger restraints.  Plaintiff's cause of action does not turn on the failure of defendant to install airbags or any other passenger restraints.  On the contrary, plaintiff alleges only that the 1983 Sentra was defectively designed because it had reclining seats which rendered the seat belts ineffective when used in a reclining position.  Plaintiff alleges that this condition made the automobile unreasonably dangerous.  Under New York law, plaintiff's cause of action turns on the showing that defendant had the choice of utilizing any one of the allegedly safer alternative designs suggested by plaintiff in connection with reclining seats, such as safety interlocks, warning systems or airbags, or alternatively, foregoing the use of reclining seats if it chooses not to adopt any of these alternatives.[3]  Because defendant's liability is predicated on its alleged failure to manufacture a reasonably safe vehicle, rather than its failure to install airbags, the second condition required by *Tofany* is not present and plaintiff's claim is therefore not preempted by section 1392(d).

■ Defendant's express preemption argument also rests on the erroneous assumption that section 1392(d) preempts safety standards imposed by state common law as well as those imposed by state statutes and regulations.  Neither section 1392(d) nor section 1391(2), which defines "Motor Vehicle Safety Standards," how-

---

**2.** Neither party has addressed the effect of *Tofany* on the issues presented in this case.

**3.** Under New York law plaintiff is required to prove that there were feasible design alternatives which would have made the automobile

safer than the design utilized by defendant. *See, e.g., Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d 102, 109, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204, 208 (1983).

ever, expressly include state common law within their scope.[4] Given the presumption against preemption, *see, e.g., Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981), there is no basis for inferring that Congress intended section 1392(d), in the absence of such reference, to preempt state common law. *Baird v. General Motors Corp.,* 654 F.Supp. 28, 30 (N.D.Ohio 1986) (construing section 1392(d)). *Cf. Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 185–86 (3d Cir.1986) (construing preemption provision of the Federal Cigarette and Advertising Labelling Act); *Palmer v. Liggett Group, Inc.,* 633 F.Supp. 1171, 1174 (D.Mass.1986) (same). Thus, even if plaintiff's claim and standard 208 regulate the same aspect of performance of the same item of equipment, section 1392(d) does not expressly preempt plaintiff's claim.

Moreover, even if the preemptive language of section 1392(d) is considered broad enough to include state common law claims, 15 U.S.C. § 1397(c) expressly preserves such common law causes of action. Section 1397(c) provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." Thus, section 1397(c) on its face preserves plaintiff's claim.

Defendant argues that a general savings clause such as section 1397(c) cannot preserve common law remedies that conflict with the statutory scheme. *See, e.g., Pennsylvania Railroad v. Puritan Coal Mining Co.,* 237 U.S. 121, 129–30, 35 S.Ct. 484, 486–87, 59 L.Ed. 867 (1915). There is, however, no conflict between the premise underlying plaintiff's common law cause of action and the federal policy underlying the Act. Defendant argues that the primary goal of Congress was to promote uniformity of safety standards. While promoting uniformity was indisputably an objective of Congress, Congress' primary goal was to improve and promote automotive safety. Section 1381 expressly states that "Congress hereby declares that the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." *See also United States v. Ford Motor Co.,* 574 F.2d 534, 539 (D.C.Cir.1978) ("The purpose of the ... Act is to protect the public ... against the unreasonable risk of death or injury").

This goal of preventing injuries is furthered by construing section 1397(c) to preserve common law claims, such as that advanced by plaintiff, which do not directly conflict with federal safety standards. As the Second Circuit has recognized,

> [t]he clear expression of purpose in section 1381 and the other evidence of legislative intent indicate that the reduction of traffic accidents was the overriding concern of Congress. We think that these expressions of legislative purpose should govern our assessment of the preemptive effect of the Act and the standards issued under it. *Tofany, supra,* 419 F.2d at 508.

*See also United States v. General Motors Corp.,* 518 F.2d 420, 434 (D.C.Cir.1975) (Act "is intended to be supplementary of and in addition to the common law of negligence and product liability") (quoting *Larsen v. General Motors Corp.,* 391 F.2d 495, 506 (8th Cir.1968)).

The legislative history confirms that section 1397(c) was intended by Congress to preserve common law remedies for injuries suffered due to defective automobiles. The Senate Report states that "the Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Code Cong. & Ad. News 2709, 2720 (1966). The House

---

**4.** Section 1391(2) provides:

"Motor vehicle safety standards" means a minimum standard for motor vehicle performance, or motor vehicle equipment performance, which is practicable, which meets the need for motor vehicle safety and which provides objective criteria.

Report also indicates that Congress "intended, and this subsection specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those related to ... tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966). Remarks by members of Congress during the debates concerning the Act are similarly instructive. *See, e.g.,* 112 Cong.Rec. 21,487 (1966) (remark of Sen. Magnusson that "compliance with Federal standards does not exempt any person from common law liability"); 112 Cong. Rec. 19,663 (1966) (statement of Rep. Dingell that Act left intact "every single common law remedy that exists against a manufacturer").[5]

The principal case relied on by defendant in support of its express preemption argument is *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986), which held that section 1392(d) expressly preempted a common law claim based on the defendant's failure to equip its automobile with an airbag. *Vanover,* however, is inapposite. In *Vanover* plaintiff alleged that defendant was liable because it failed to provide a passive restraint system, such as airbags. As already discussed, plaintiff in this case does not assert that defendant is liable because it failed to equip the 1983 Sentra with airbags but simply alleges that installation of airbags was one of a number of options defendant could have adopted to remedy its allegedly defective design.

Even if *Vanover* was on point, however, its reasoning in is unpersuasive. First, it did not consider the effect of section 1397(c) on the preemptive scope of section 1392(d). Second, it equated common law tort liability with the state law standards preempted by section 1392(d). While common law liability is a form of state regulation, *see, e.g., San Diego Building Trades*

*Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959), the issue is not whether common law liability is a form of regulation but whether it is the type of regulation Congress intended section 1392(d) to preempt. Without alluding either to the legislative history or the presumption against preemption, *Vanover* simply assumed that Congress so intended. This assumption is unwarranted in light of Congress' express intention to preserve common law remedies.

### III. *Defendant's Implied Preemption Argument*

■ Defendant also argues that plaintiff's claim is impliedly preempted by the Act. Federal law may impliedly preempt state law in two ways. First, "Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government." *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (citations omitted). *See also Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Second, "if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible ... or when the state law 'stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.' " *Id.* (citations omitted). *See also de la Cuesta, supra,* 458 U.S. at 153, 102 S.Ct. at 3022; *Edgar v. Mite Corp.,* 457 U.S. 624, 631, 102 S.Ct. 2629, 2635, 73 L.Ed.2d 269 (1982).

---

5. Defendant also argues that because no cause of action based on crashworthiness had been judicially recognized in 1966, when section 1397(c) was enacted, such a cause of action is not preserved by section 1397(c). Neither the language nor the legislative history of section 1397(c), however, indicate that Congress intend-

ed to freeze the development of the common law as it existed in 1966. Indeed, the leading case recognizing the crashworthiness doctrine, which was decided two years after Congress passed the Act, expressly rejected this contention. *Larsen, supra,* 391 F.2d at 506.

Defendant concedes that Congress did not intend to occupy the entire field of automotive safety [6] and that upholding plaintiff's common law cause of action would not make compliance with the Act or standard 208 impossible. Instead, defendant argues that plaintiff's "airbag claim" conflicts with federal policy in three ways. First, according to defendant, plaintiff's claim undercuts Congress' goal of ensuring uniformity of automotive safety regulation. *See* S.Rep. No. 1301, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad. News 2709, 2720 ("The centralized mass production, high volume character of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, but they be uniform throughout the country").

Second, defendant asserts that plaintiff's airbag claim is contrary to the Department of Transportation's regulatory policy of "provid[ing] sufficient latitude for industry to develop the most effective systems" instead of "mandating the specific use of one device such as airbags ..." 49 Fed.Reg. 28,962, 28,997 (July 17, 1984) (Department of Transportation announcement of Final Rule for Standard 208). *See de la Cuesta, supra,* 458 U.S. at 154, 102 S.Ct. at 3023 (federal regulations as well as statutes may preempt state law).

Third, defendant argues that plaintiff's airbag claim conflicts with the Congressional policy underlying a 1974 amendment to the Act. Pub.L. 93–492, Title I § 109, 88 Stat. 1482, *codified at* 15 U.S.C. § 1410b. This provision prohibits the Department of Transportation from adopting a motor vehicle safety standard which requires airbags unless it "(a) afford[s] interested persons an opportunity for the presentation of oral as well as written data, views, or argu-

ments; (b) keep[s] a transcript of the oral presentation; [and] (c) notif[ies] the Chairmen of the House Interstate and Foreign Commerce Committee and the Senate Commerce Committee." Conf.Rep. No. 1452, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 6084, 6108. The amendment also provides for a bicameral legislative veto of any motor vehicle standard requiring airbags. 15 U.S.C. § 1410b(d). Defendant argues that section 1410b demonstrates that Congress has determined that the imposition of any requirement of airbags should be governed solely by federal law, pursuant to rigorous procedures and subject to Congressional veto.

Defendant's implied preemption arguments are based on the same misunderstanding of plaintiff's claim as is defendant's express preemption argument. Plaintiff does not allege that defendant is liable because it failed to equip its automobile with airbags but simply alleges that equipping the automobile with airbags was a feasible design alternative that would have alleviated the danger of the design actually used by defendant. At oral argument defendant conceded that New York could impose strict liability for defendant's allegedly defective seat design without regard to the feasibility of alternative safer designs. The fact that New York products liability law imposes the additional burden on plaintiff of demonstrating the availability of safer design alternatives, *Voss v. Black & Decker Manufacturing Co.,* 59 N.Y.2d 102, 109, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204, 208 (1983), does not bring New York law into conflict with the policies underlying standard 208, the Act or the 1974 amendment to the Act merely because one of the allegedly safer design alternatives is the subject of a federal motor vehicle safety standard.

---

**6.** Somewhat inconsistently, defendant argues that the decision of the Department of Transportation to exempt convertibles from the passive restraint requirement of standard 208 during the phase-in period, see 51 Fed.Reg. 37,028 (October 17, 1986), "evidences the exclusive authority of the federal government to decide whether airbags should be required in light of other automotive design factors that affect passenger

safety." Defendant's argument might have merit if there were any indication that Congress intended to preempt the field of motor vehicle safety regulation. To the contrary, section 1397(c) and the legislative history of the Act are persuasive evidence that Congress intended that the states were to have an important role in this area.

Accordingly, defendant's motion based on preemption is denied.

## IV. *Failure to State a Cause of Action Under New York Law*

■ Defendant argues that even if plaintiff's airbag claim is not preempted by federal law, it is defective under New York law. Defendant argues that, as a matter of law, it did not have a duty to install airbags because such a requirement would require it to install "ultimate safety devices" (Defendant's Memorandum at page 29) and in effect insure the safety of every passenger, which it has no duty to do under New York law.

While defendant is correct that New York law does not require it to insure the safety of those riding in its automobiles, *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 158, 350 N.Y.S.2d 644, 649, 305 N.E.2d 769, 772 (1973) (quoting *Larsen v. General Motors Corp.*, 391 F.2d 495, 502–03 (8th Cir. 1968)), New York law does impose liability on the manufacturers of products that are unreasonably dangerous. Plaintiff's claim is that defendant's automobile was of an unreasonably dangerous design and that there were safer design alternatives available, not that defendant was required to guarantee plaintiff's safety. While defendant has articulated reasons as to why installing airbags was not a feasible alternative, the feasibility and effectiveness of this and other options are questions for the jury to decide at trial. *See, e.g., Jiminez v. Dreis & Krump Manufacturing Co., Inc.*, 736 F.2d 51, 55 (2d Cir.1984); *Voss, supra*, 59 N.Y.2d at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208.

Defendant also argues that its compliance with standard 208 satisfies its duty to plaintiff under New York law. Cases in other jurisdictions have held that compliance by a manufacturer with federal motor vehicle safety standards does not establish that the automobile was not defectively designed as a matter of law. *Sours v. General Motors Corp.*, 717 F.2d 1511, 1517 (6th Cir.1983); *Dorsey v. Honda Motor Co. Ltd.*, 655 F.2d 650, 656 (5th Cir.1981), *modified in part on other grounds*, 670 F.2d

21 (5th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *General Motors Corp. v. Edwards*, 482 So.2d 1176, 1198 (Ala.1985). These cases are consistent with New York law. Under New York law, "evidence of ... [compliance with government] regulation ... [is] not ... dispositive, as a matter of law, as to whether the [automobile] was 'reasonably safe' when it left the hands of the manufacturer." *Jiminez, supra*, 736 F.2d at 54 (footnote omitted). *See also Stone v. Sterling Drug, Inc.*, 111 A.D.2d 1017, 490 N.Y.S.2d 468, 470 (3d Dep't 1985). Thus, while defendant's compliance with standard 208 "is some evidence of due care," *Stone, supra*, 490 N.Y.S.2d at 470 (quoting *Sherman v. Lowenstein & Sons, Inc.*, 28 A.D.2d 922, 282 N.Y.S.2d 142, 143 (2d Dep't 1967)), it is by no means controlling.

Accordingly, defendant's motion based on state law grounds is denied.

## V. *Conclusion*

Defendant's motion is denied. Plaintiff's motion to compel discovery is referred to the Magistrate.

SO ORDERED.