■ BONNIE JACKSON, as Executrix of RUSSELL C. JACKSON, Deceased, Appellant, v BOMAG GMBH et al., Respondents. (And Two Third-Party Actions.) [638 NYS2d 819] —Peters, J.

Russell C. Jackson (hereinafter decedent) was fatally injured in a road construction accident in June 1992. Decedent, employed by the Town of Binghamton, Broome County, for approximately 10 years, was an experienced operator of the Bomag BW 6AS static roller (hereinafter the roller) and was operating such roller in order to "hot patch" potholes. It is uncontroverted that the roller overturned and crushed decedent after he moved onto the shoulder of the road and got too close to a concealed drop off.

The roller was manufactured by defendant Bomag GmbH in April 1986 in Germany for the purpose of asphalt compaction. In May 1986, Bomag sold the roller, which weighed approximately six tons, to defendant Tracey Road Equipment, Inc., an authorized dealer of Bomag products. Although Bomag offered a "rollover protective structure" (hereinafter ROPS) as optional safety equipment on its static rollers, the roller in question was sold to Tracey without ROPS. Thereafter, the Town leased the roller from Tracey and eventually purchased it in December 1986. At the time of sale, neither Federal nor State regulations required that ROPS be installed on static rollers of the size involved in the instant case.

Plaintiff, decedent's wife and executor of his estate, commenced this action in November 1992 alleging strict products liability for a design defect and failure to warn, negligence and wrongful death. Bomag and Tracey each commenced third-party actions against the Town. After discovery, Bomag moved for summary judgment as did Tracey thereafter, principally relying on Bomag's submission with the inclusion of additional pages of deposition testimony. Supreme Court granted defendants' motions and plaintiff appeals.

Plaintiff contends that the roller was not reasonably safe for its intended use due to the failure to equip such machine with ROPS as standard equipment, and the further failure to include a decal or warning of the risk of lateral rollover. In order to establish a prima facie case of strict products liability, one must engage in what has emerged as a "risk/utility balancing test" and assess whether " 'if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner' " (*Denny v Ford Motor Co.*, 87 NY2d 248, 257, quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108; *see, Fallon v Hannay & Son*, 153 AD2d 95, 99). As the Court of Appeals recently recited: "This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2)

its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes" (*Denny v Ford Motor Co., supra*, at 257; *see, Voss v Black & Decker Mfg. Co., supra*, at 109; *Fallon v Hannay & Son, supra*, at 99). Thus, "[a] defectively designed product 'is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce' " (*Fallon v Hannay & Son, supra*, at 99, quoting *Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479).

As the proponent of the motion for summary judgment, Bomag submitted, *inter alia*, the affidavits of engineering experts Ludger Schaus and Thomas Goodney. Schaus, a mechanical engineer employed by Bomag at its facility in Germany, stated that the roller was not defective and that it was designed for use on flat or low grade paved road surfaces where the risk of rollover is "very small". He noted that ROPS was available as an option for customers with particular needs. In his examination before trial, Schaus further stated that "if the machine is operated as intended, then any hazard [of sliding and/or tipping on steep slopes] should not appear". He also indicated that in 1986, the year the instant roller was manufactured, sold and leased, engineers at Bomag were not aware of any incidents of rollovers.

Goodney's affidavit mirrored such conclusions and opined that the roller "was properly designed and safe for its intended use" and that the absence of ROPS as standard equipment would not render it defective or unsafe. Basing such determination on his assessment that its "width, weight distribution and low center of gravity" renders the roller "more stable than other construction machines", and noting that it is not used in mud, snow, ice or slippery conditions and is operated at speeds of zero to approximately eight miles per hour, Goodney concluded that the risk of rollover is "very unlikely". He also remarked that in 1986 no Federal, State, international or industry regulations mandated ROPS on the type of static roller under review here, and that statistics revealed that ROPS was rarely purchased as an option for such roller. Good-

ney further opined that "the customer is best suited to make [the] determination [of whether ROPS is necessary]".

Tracey similarly relied on these experts' affidavits and further included excerpts from the deposition of John Basa, the Town Highway Superintendent at the time of the incident. Such testimony indicated that from at least the time the Town leased the roller from Tracey, Basa was fully familiar with ROPS from reading construction magazines and was provided with and did, in fact, read a sales brochure that listed ROPS as optional safety equipment. Basa's testimony confirmed that it was his determination that ROPS was not necessary on the roller because "the machine was being used on [a] fairly flat surface and I didn't see the need for it". Basa further testified that there was an instructional meeting regarding the operation of the roller in which instructions regarding keeping the roller on the road, rather than on the shoulder, were given.

Plaintiff tendered the affidavits of engineering experts David MacCollum and Alden Gaudreau in opposition. MacCollum opined that the roller was not reasonably safe when manufactured and sold since there is a danger of rollover on almost every job site. He further opined that the availability of ROPS as optional equipment does not make rollers without ROPS reasonably safe and that Bomag was in the best position to realize that ROPS was a safety necessity. MacCollum's affidavit also indicates that decedent would have survived with minor injuries had the roller been equipped with ROPS. It set forth data and statistics regarding rollover accidents, and concludes that such statistics were known, or should have been known, by Bomag. Gaudreau opined that the roller "tipped due to uneven terrain at the junction of the roadway and the unimproved shoulder" and that the roller "was not reasonably safe for use if there was a possibility that it would be used adjacent to road drop-offs or embankments". He further opined that had the roller been equipped with ROPS, it would have prevented the fatality. Finally, as a means to counter Basa's testimony, Gaudreau opined that the Town would not know that the unit was "inherently unsafe for its intended use" without the benefit of engineering analysis.

Our review of the record supports Supreme Court's determination that pursuant to the risk/utility balancing test, plaintiff failed to create an issue of fact evidencing that the product was defectively designed. As in *Biss v Tenneco, Inc.* (64 AD2d 204, 207-208, *lv denied* 46 NY2d 711), Basa's testimony confirms that ROPS was available at the time of both the Town's rental and purchase of the roller, and that at such

times Basa understood the purpose of ROPS. The record reflects that Basa made a conscious decision not to purchase the ROPS option for the roller since it was going to be used on "fairly flat surfaces". Thus, the record reflects that not only at the time of purchase but also at the time of the accident, the roller was in the condition contemplated by the consumer and was not unreasonably dangerous if used in the manner intended (see, Robinson v Reed-Prentice Div. of Package Mach. Co., 49 NY2d 471, 479-480, supra; Fallon v Hannay & Son, 153 AD2d 95, 100, supra). As both experts admitted that the safety of the roller varied according to the job site, we must conclude that Bomag fulfilled its duty of reasonable care when it designed the product with the ROPS safety option and thereafter made such option available to the consumer, who was in the better position to assess its need in light of the use for which it was purchased (see, Biss v Tenneco, Inc., supra, at 207-208; see also, Fallon v Hannay & Son, supra, at 100; Rainbow v Elia Bldg. Co., 79 AD2d 287, 291, affd 56 NY2d 550).

We further find that Supreme Court properly dismissed the failure to warn claim since there is no duty to warn of risks likely to be appreciated by the user (see, Fallon v Hannay & Son, supra, at 101; Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55, 65; Restatement [Second] of Torts § 388, comment k; Prosser and Keeton, Torts § 96, at 686 [5th ed]).

Cardona, P. J., Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, with costs.