■ STEVEN M. SCHRIBER, Appellant, v MELROE COMPANY et al., Respondents. [710 NYS2d 416] —Peters, J. Appeal from a judgment of the Supreme Court (Moynihan, Jr., J.), entered May 13, 1999 in Saratoga County, upon a dismissal of the complaint at the close of plaintiff's case.

On September 17, 1994, plaintiff was injured while operating a Bobcat T-208 walkbehind excavation trencher (hereinafter the trencher) which was manufactured by defendant Melroe Company and rented from defendant J.R. Doty, Inc., doing business as U Rent All. In July 1995, plaintiff commenced this action by alleging products liability as to Melroe based on theories of design defect, breach of warranty, failure to warn and negligence. As to J.R. Doty, he alleged common-law negligence and a failure to warn.

John Doty, president of J.R. Doty, testified that he bought the trencher from Melroe in 1990. He testified that there is a training program instituted for all employees which reviews safety precautions and the operation of all equipment for rental. Prior to renting the trencher, he required that the customer be questioned as to the intended use of the product and the terrain to confirm that it was the most appropriate

tool for the job. Customers were told to call if questions arose regarding the operation of the unit and were warned that it would be difficult to use if there were rocks in the ground. Doty specifically recalled warning plaintiff and others not to put their hands or feet near the chain and auger and to instead use a stick or piece of wood to clear rocks in the trencher's path. Finally, he noted the numerous warning signs on the trencher, including one which specifically read, "Danger, avoid injury or death, bystanders must stay 20 feet, 6 meters, away from chain and auger."

Plaintiff is a mechanical engineer and graduate of Rensselaer Polytechnic Institute. When the accident occurred, he was employed by General Electric Company as a development engineer and, in the course of such employment, had worked on the development of equipment that had rotating shafts. Admitting that he was fully familiar with the use of outdoor and portable power equipment of various types, he testified that the decision to rent a trencher was based upon his own research in comparing the efficacy of a backhoe to that of a trencher when seeking to place electrical wiring underground. Plaintiff confirmed that he was given instructions and a demonstration with respect to the use and operation of the trencher by J.R. Doty employees on two separate occasions prior to taking possession, including how to start the machine, the different levers that operated its controls, engagement and disengagement of the digging mechanism by pushing the "lock-out" lever, and the use of the hook that attached to a bar to ensure that the chain and auger could not engage. Plaintiff also acknowledged that the trencher was inherently dangerous if the lock-out lever was not properly engaged and that he read most of the warning labels on the machine on the morning of the accident, one of which warned that the engine should be stopped prior to leaving the controls.

Plaintiff testified that on the day of the accident, the trencher stalled three to five times when it hit rocks in the ground. On each of those occasions, he disengaged the chain by pulling the lock-out lever all the way back to a vertical position to raise the boom and then shut the engine off before examining the trench. After these few occasions, plaintiff unilaterally decided to change his method of removing obstructions. Now, when the trencher hit a rock, he stopped turning the engine off because pulling on the engine cord four to five times to restart it began to tire him and hurt his hand. Hence, "[w]ith the engine running and the boom locked out, the mechanism locked out, I would either see or reach to find the rock that had stopped the

trencher and remove[ ] it." After using this procedure at least a dozen times, he reached under the trencher to remove a rock and felt "something hit my hand and I yanked it out and it was a mess."

Alden Gaudreau, a mechanical engineer, testified as an expert witness for plaintiff. He confirmed that plaintiff, as a mechanical engineer, studied mechanisms and warnings in the course of his profession which should have made him keenly aware of how devices and warnings work. Upon his examination of the trencher almost four years after the incident, the lock-out lever fully functioned when he tested it. He further noted that when the lock-out lever was pulled back so that it was fully engaged, the chain would not move. Although his testing revealed that it was necessary to apply more than 50 pounds of pressure to pull on the lock-out lever, he noted that there was a button on the lever to adjust the tension to approximately 20 pounds. However, he opined that even if you pulled the lever up just before it latched and shut the machine off, it could restart; therefore, there should have been an interlock mechanism to keep it from starting when the chain was not fully locked out. He also contended that a dead-man switch should have been included in the design of the machine so that it would stop the machine when the operator left the control panel.

After the close of plaintiff's proof, Melroe and J.R. Doty each moved for a directed verdict. Supreme Court dismissed the complaint in its entirety, finding that the breach of warranty claim was time barred, that there was no breach of a duty to warn since plaintiff was an experienced user of power tools, that J.R. Doty adequately warned renters of the dangers involved in the use of the trencher and that there was no proof in the record to support a claim of products liability against Melroe. Plaintiff appeals.

"Judgment pursuant to CPLR 4401 is appropriate only when 'giving the plaintiff the benefit of every favorable inference, there is no rational basis on which a jury could reasonably find for the plaintiff'" (*Gleason v Holman Contract Warehousing*, 263 AD2d 913, 914, quoting *Walden v Otis El. Co.*, 178 AD2d 878, 879, *lv denied* 79 NY2d 758). First reviewing whether plaintiff met his burden of establishing negligence by J.R. Doty by setting forth the duty owed, a breach of that duty and that such breach caused his resultant injuries (*see, Rolfe v Galt*, 102 AD2d 983, *lv denied* 63 NY2d 604), we note that no duty can be found to warn product users of obvious risks and dangers that could or should have been "recognized as a matter of com-

mon sense" (*Pigliavento v Tyler Equip. Corp.*, 248 AD2d 840, 842, *lv dismissed, lv denied* 92 NY2d 868; *see, Torrogrossa v Towmotor Co.*, 44 NY2d 709, 711). Plaintiff, as a mechanical engineer with a background in power tools, while not owed such a duty, was nonetheless warned on two separate occasions by J.R. Doty employees of the obvious risks and dangers of placing his hands near the trencher without shutting off the engine prior to his removal of rocks. As to any contention that J.R. Doty was negligent by its failure to confirm, prior to his rental, that the lock-out lever was working properly, we find no evidence suggesting that it was not working properly on the date of the accident or, for that matter, four years later upon Gaudreau's examination. Accordingly, Supreme Court properly granted J.R. Doty's motion for a directed verdict.

Addressing next the claims against Melroe: "to establish a prima facie case of strict products liability, one must engage in what has emerged as a 'risk/utility balancing test' and assess whether ' "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" ' " (*Jackson v Bomag GmbH*, 225 AD2d 879, 800, *lv denied* 88 NY2d 805, quoting *Denny v Ford Motor Co.*, 87 NY2d 248, 257, quoting *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108). We find that plaintiff failed to submit sufficient evidence to support this claim. While plaintiff's expert suggested that the trencher should have been designed safer by adding a dead-man switch, no evidence was submitted by plaintiff concerning the possibility of designing and manufacturing this particular trencher in 1990 with such switch or of Melroe's ability to spread the cost of the design change (*Jackson v Bomag GmbH, supra*, at 880-881). Further, no evidence was presented to support plaintiff's claim that the lock-out lever or tension control device was defective.

As to the failure to warn, we agree that a manufacturer must provide adequate admonitions regarding the use of its product and the dangers of its risks (*see, DiMura v City of Albany*, 239 AD2d 828, 829; *Stone v Sterling Drug*, 111 AD2d 1017, 1019). Notwithstanding the principle that "no duty [will be found] to warn of risks likely to be appreciated by the user" (*Jackson v Bomag GmbH, supra*, at 883), undisputed evidence reveals that Melroe did place such warnings on the trencher specifically warning against the activity which resulted in plaintiff's injuries. Although plaintiff contends that there existed a danger that the trencher's chain could start by itself due to a

defect in the lock-out lever and that Melroe did not warn of that danger, no evidence supported the existence of any such defect nor was there evidence that it was the cause of plaintiff's injuries. In connection therewith, no error can be found in Supreme Court's exclusion of plaintiff's testimony regarding his thought process immediately preceding the accident since ample evidence existed that plaintiff knew prior thereto how to operate the trencher and that it was inherently dangerous if it was not properly stopped before clearing an obstruction.

Finally, we find no error in the failure to admit Gaudreau's testimony to the effect that the accident occurred because plaintiff did not fully stop the chain with the lock-out lever because the tension on the lever was too tight. Plaintiff consistently testified that the lock-out lever was fully engaged each and every time that he stopped to clear an obstruction and no testimony was proffered that he found it too difficult to engage. Since Gaudreau's opinion was based upon facts contradictory to those in the record (*see*, *Reyes v Kimball*, 269 AD2d 156) and his inspection of the subject machine occurred four years after the incident and after its rental to others, the exclusion of Gaudreau's testimony was proper (*see*, *Cover v Cohen*, 61 NY2d 261, 274).

Mercure, J. P., Crew III, Spain and Mugglin, JJ., concur. Ordered that the judgment is affirmed, with costs.