**David J. PAHUTA, Jr., Plaintiff,**

v.

**MASSEY–FERGUSON, INC., Defendant.**

**No. 91–CV–107H.**

United States District Court,
W.D. New York.

Oct. 10, 1996.

James E. Brown, Brown & Mohun, Depew, New York, for plaintiff.

Anthony J. Colucci, III, Block & Colucci, P.C., Buffalo, New York, for defendant.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further pro-

ceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Pending for decision are defendant's motion for summary judgment on the issues of liability for product defect and breach of warranty, plaintiff's cross-motion for summary judgment on liability, and defendant's motion for order of preclusion. Each motion will be decided in turn.

### BACKGROUND

On April 20, 1990, plaintiff was loading a twenty-foot length of corrugated steel pipe into a dump truck for his employer, Keeler Construction, using a tractor loader with a forklift attachment to lift the pipe. As plaintiff attempted to drop the pipe over the side of the dump truck, the pipe rolled backward over the forks, down the loader arms, and landed on top of him. Plaintiff is permanently paralyzed as a result of the injuries he received.

On October 4, 1990, plaintiff commenced an action against Varity, Inc.[1] in the Supreme Court, Erie County, State of New York. On February 8, 1991, all claims against Varity were discontinued and Massey–Ferguson, Inc. was substituted as the only named defendant.[2] The case was then removed to this court on the basis of diversity of citizenship.

The machine involved in this incident was a model MF20 tractor bearing serial number 9A93530 and equipped with an MF32 loader bucket (hereinafter "MF20 tractor loader"). It was manufactured by defendant on February 24, 1970 and was shipped to a local dealer on February 25, 1970. Keeler Construction purchased the machine on April 16, 1970. Keeler Construction owned the tractor loader for the twenty years prior to plaintiff's injuries.

Plaintiff claims that defendant is liable for plaintiff's injuries on theories of negligence, strict liability, and breach of express and implied warranties (Item 1, Ex. A). In his complaint, plaintiff alleges that the MF20 tractor was defective when it was manufactured because its design did not incorporate a roll cage and because it was sold with a forklift attachment that operated in a highly dangerous manner. Plaintiff also alleges that defendant negligently failed to warn of the tractor's dangerous condition.

On November 16, 1995, defendant moved for summary judgment. Defendant admits that plaintiff's injuries would have been avoided had the MF20 been equipped with either a rollbar, ROPS (roll over protective structure), or self-leveling device for the loader and forklift attachment (Item 51, Statement ¶ 10).[3] However, defendant argues that it is entitled to summary judgment on the grounds that: (1) a manufacturer cannot be held liable for injuries caused by a product where it made optional safety equipment available and made the purchaser aware of those options, and (2) plaintiff's breach of warranty claims are time-barred.

On January 2, 1996, plaintiff's attorney filed a responding affidavit (Item 57). Essentially, plaintiff's argument is that roll over protection was required by New York law and industry standards at the time the MF20 tractor loader was manufactured in 1970, and that defendant failed to make such protection available to purchasers.

On September 10, 1996, defendant moved for an order precluding certain of plaintiff's exhibits from consideration in the motion for summary judgment on the ground that plaintiff failed to comply with a Rule 34 discovery request (Item 73).

On September 13, 1996, more than eight months after filing his affidavit in opposition to the summary judgment motion, plaintiff filed a memorandum of law in opposition to that motion and defendant's motion for order of preclusion (Item 80). Plaintiff's memorandum cites few cases and provides no analysis of the legal issues raised in defendant's motion for summary judgment.

---

1. The correct name is Varity Corporation.

2. Prior to July 30, 1991, Massey–Ferguson, Inc., a farm machinery manufacturer, was a U.S. subsidiary of Varity Corporation, then a Canadian company.

3. The terms rollbar and ROPS both refer to safety structures designed to protect the operator in the event of an equipment roll over.

The motion for summary judgment, cross-motion for summary judgment, and motion for order of preclusion are discussed in turn below.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In reaching this determination, the court must assess whether there are any material facts issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. To avoid summary judgment, the nonmoving party must then come forward with enough evidence to support a jury verdict in its favor. The nonmoving party cannot prevail "merely by vaguely asserting the existence of some unspecified disputed material facts," *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989), or on the basis of "mere speculation or conjecture." *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir. 1986) *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). When a dispute in fact is shown to exist, it must be material in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510.

### II. Manufacturer's Liability for Product Defect

Under New York law, a plaintiff seeking recovery for injuries caused by an alleg-edly defective product may assert one or more of the following theories of liability: (1) negligence, (2) strict liability, (3) breach of express warranty, and (4) breach of implied warranty. *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983) (citing *Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 400, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975)). In the present case, plaintiff's defective product claim sounds in both strict products liability and negligence. Defendant, in its motion for summary judgment, relies extensively on *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter, Inc.,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976), a case brought under the theory of negligence (Item 52, p. 12). Therefore, to properly address defendant's first ground for summary judgment and plaintiff's cross-motion, it is helpful to examine the legal standards applicable to the distinct theories of strict products liability and negligent product design.

### A. Strict Products Liability

A manufacturer who places a defective product on the market is strictly liable where the defect causes injury, provided that (1) the product was used in the manner intended, (2) the injured user, exercising reasonable care, would not have discovered the defect and perceived its danger, and (3) the injured person would not have averted his injuries by the use of reasonable care. *Codling v. Paglia,* 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973). An injured plaintiff may assert a claim of strict products liability when the product defect arises from a "mistake in manufacturing, improper design, or by the inadequacy or absence of warnings for the use of the product." *Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 478–79, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980) (citations omitted).

In the present case, plaintiff alleges the tractor loader was of unsafe design in that it failed to incorporate certain safety features as standard equipment. New York defines a defectively designed product as "one which, at the time it leaves the seller's hands, is in a condition not reasonably con-

templated by the ultimate consumer and is unreasonably dangerous for its intended use...." *Id.* at 479, 426 N.Y.S.2d 717, 403 N.E.2d 440. Therefore, to establish a prima facie case in strict liability for design defect, the plaintiff must show that the design was a substantial factor in causing the injury, and that the product was not reasonably safe as designed. *Voss, supra* 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204. The proper standard is "whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Id.*

█ The determination of whether a product was defectively designed involves balancing the likelihood of harm against the utility of the product and cost of preventing the harm. Factors that may be considered include: "(1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product—that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design." *Voss, supra* at 109, 463 N.Y.S.2d 398, 450 N.E.2d 204 (citing *Rainbow v. Elia Bldg. Co., Inc.,* 79 A.D.2d 287, 291, 436 N.Y.S.2d 480, 483 (4th Dept. 1981), *aff'd,* 56 N.Y.2d 550, 449 N.Y.S.2d 967, 434 N.E.2d 1345 (1982); Wade, On the Nature of Strict Tort Liability for Products, 44 Miss.L.J. 825, 837–838; 1 N.Y. PJI2d 139–40 (1982 Supp.)).

Defendant has admitted that the absence of either a rollbar, ROPS, or self-leveling device on the MF20 tractor loader was a substantial factor in causing plaintiff's injuries (Item 51, Statement ¶ 10). Therefore, to prevail on a motion for summary judgment, defendant must show that the MF20 tractor loader was in a condition reasonably contem-plated by the consumer and was not unreasonably dangerous for its intended use when it was sold in 1970. *Robinson, supra,* 49 N.Y.2d at 479, 426 N.Y.S.2d 717, 403 N.E.2d 440; *Rainbow v. Albert Elia Bldg. Co., Inc.,* 79 A.D.2d 287, 289–90, 436 N.Y.S.2d 480, 482 (4th Dept.1981), *aff'd,* 56 N.Y.2d 550, 449 N.Y.S.2d 967, 434 N.E.2d 1345 (1982) (manufacturer's duty of nondefective design is assessed in light of technology and conditions at the time product was put on the market).

## B. Negligent Product Design

█ Under New York law, a manufacturer has a duty to use reasonable care in designing its product "so as to avoid any unreasonable risk of harm ... when the product is used in the manner for which [it] was intended ... as well as an unintended yet reasonably foreseeable use." *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter,* 39 N.Y.2d 376, 385–86, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976) (citations omitted). Thus, in a claim of negligent design, the focus shifts to the conduct of the manufacturer. The plaintiff must show not only that the product was defective when it left the manufacturer's hands, but also that the manufacturer could have foreseen the injury and therefore acted unreasonably in designing its product. *Voss, supra* 59 N.Y.2d at 107, 463 N.Y.S.2d 398, 450 N.E.2d 204; *Robinson, supra* 49 N.Y.2d at 480, 426 N.Y.S.2d 717, 403 N.E.2d 440.

█ A manufacturer is not obligated to design a product that is accident-proof, no matter how careless or reckless the ultimate consumer might be. *Micallef, supra* 39 N.Y.2d at 386, 384 N.Y.S.2d 115, 348 N.E.2d 571; *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 157, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973). Where a product is designed and marketed "in a condition safe for the purposes for which it is intended or could reasonably be intended, the manufacturer has satisfied its duty." *Robinson, supra* 49 N.Y.2d at 481, 426 N.Y.S.2d 717, 403 N.E.2d 440.

Therefore, as with a claim of strict products liability, a defendant seeking summary judgment on the issue of negligent design must show that the product as designed was safe for the purposes intended.

## III. Defendant's Motion for Summary Judgment

### A. Product Liability—Standard vs. Optional Equipment

■ Defendant claims that it should be relieved of liability as a matter of law because it offered optional safety equipment that would have prevented plaintiff's injuries. This claim must be examined in light of the standards set forth above for determining a manufacturer's liability for defective product.

Defendant cites *Biss v. Tenneco, Inc.*, 64 A.D.2d 204, 409 N.Y.S.2d 874 (4th Dept. 1978), as the basis for its assertion that it cannot be held liable, as a matter of law, for failing to make certain accessories standard rather than optional equipment. In *Biss*, the plaintiff's decedent was killed when the loader he was driving went off a slippery road and tipped into a utility pole, pinning the plaintiff between the loader and the pole. The plaintiff sued a construction equipment manufacturer for design defect because the loader was not equipped with a ROPS, which might have prevented the injuries. In its decision, the Fourth Department first noted the duty standard applicable to negligent design claims, quoting *Micallef, supra* at 385–86, 384 N.Y.S.2d 115, 348 N.E.2d 571. Upon reviewing the evidence produced at trial, the Fourth Department stated that "the loader was 'stable' or 'very stable' when operated properly" and did not differ "in any material safety feature from products marketed by the industry generally." *Biss, supra,* 64 A.D.2d at 207, 409 N.Y.S.2d at 876. It then went on to hold that "defendants had fulfilled their duty to exercise reasonable care in designing the product as a matter of law when they advised the purchaser that an appropriate safety structure for the loader was available." *Id.*

Based on this holding, defendant concludes that a manufacturer can defeat a product liability claim merely by showing that optional equipment was available and that the purchaser was advised of that availability.[4] This reading of *Biss* is much too broad. *Biss* was premised on a finding made after trial that the loader without a ROPS was reasonably safe. *Id.* The court then went on to discuss the fact that the dangers posed by properly designed equipment can increase depending on the task and site conditions to which the equipment is applied. *Id.*

*Biss* stands for the proposition that where an inherently safe product is subject to widely varied applications that may increase its danger, the duty to use reasonable care in selecting optional equipment appropriate to the intended use should rest with the purchaser. In other words, *Biss* does not negate the need to show, under a theory of either strict liability or negligence, that the manufacturer designed and marketed a product that was reasonably safe for its intended use. *Id.*

This interpretation of *Biss* is supported by subsequent New York case law. In *Rainbow v. Albert Elia Bldg. Co. supra,* the court first concluded based on the evidence submitted that a motorcycle manufactured without side crash bars was not unreasonably dangerous. The court then discussed in dicta the purchaser's duty to select optional equipment necessary for his intended use. 79 A.D.2d at 289–91, 436 N.Y.S.2d at 482–83. In *Fallon v. Hannay & Son,* 153 A.D.2d 95, 550 N.Y.S.2d 135 (1989), the Third Department held that "defendant's proof supported the conclusion that the [product] alone was reasonably safe and that defendant satisfied its duty not to market a defective product by giving purchasers the option to buy its [product] with or without the [safety equipment]." *Id.,* 153 A.D.2d at 100, 550 N.Y.S.2d at 138. In *Jackson v. Bomag,* —— A.D.2d ——, 638 N.Y.S.2d 819 (1996), the Third Department reviewed a motion for summary judgment on the issue of an optional ROPS. In affirming the lower court's decision to grant the manufacturer's

---

**4.** Defendant states that in affirming *Rainbow v. Albert Elia Bldg. Co.*, 79 A.D.2d 287, 436 N.Y.S.2d 480 (4th Dept.1981), *aff'd,* 56 N.Y.2d 550, (1982), the Court of Appeals adopted the *Biss* holding as the law in New York. That assertion is incorrect. The *Rainbow* court cited *Biss* in dicta, specifically stating that it did not

decide the case before it on that ground. Thus, in affirming *Rainbow* for the reasons stated in the lower court's opinion, the Court of Appeals did not affirm *Biss.* It should be noted that the Court of Appeals has yet to rule on the issues decided in *Biss.*

motion, the court stated: "the record reflects that ... at the time of purchase ... [and] of the accident, the roller was ... not unreasonably dangerous if used in the manner intended." *Id.*, 638 N.Y.S.2d at 823.

■ Thus, a manufacturer cannot escape liability for designing an unsafe product merely by asserting that it provided the purchaser with the option of making it safe. The manufacturer must first demonstrate that the product is reasonably safe if used in the intended manner.

In this case, defendant submitted affidavits and exhibits to support its assertions that a rollbar was available and the purchaser knew of its availability. But defendant has failed to demonstrate that the MF20 tractor loader was reasonably safe as designed when used for its intended purpose.

Contrary to defendant's contention, the fact that the loader at issue in the *Biss* case was found to be inherently safe when operated properly does not dispose of the question in this case. The loader in *Biss* was produced by a different manufacturer, J.I. Case Co., Inc. The year of manufacture and model of the J.I. Case loader are unknown, there is no indication that the J.I. Case loader was being used with fork tines, and there is no indication that the J.I. Case machine was marketed for any use other than as a loader. The danger addressed in the *Biss* decision was the likelihood of roll over as opposed to injury from falling objects. Thus, defendant's claim that the *Biss* decision involved "the exact same piece of equipment" is simply untrue (Item 74, p. 11).

For these reasons, defendant has failed to meet its initial burden of demonstrating the absence of a genuine issue of material fact as to an element of a product defect claim.

On the other side of the coin, plaintiff has come forth with evidence sufficient to raise genuine issues of material fact as to whether federal, state, or industry standards required an overhead guard or rollbar as standard equipment when it manufactured the MF20 (Item 57, pp. 15–17, 21–22; Item 57–a, Exs. G, H, J, M, N, O); whether defendant provided adequate instructions and/or warnings regarding use of the MF20 with optional equipment (Item 57, pp. 23–24; Item 57–a, Exs. E, F, I); whether defendant had a rollbar available for the MF20 in 1970 (Item 57, pp. 50–51, 53–54; Item 53, Exs. E, F; Item 57–a Ex. E; Item 59); and whether defendant had a self-leveling device available for the MF32 loader in 1970 (Item 57, pp. 66–67; Item 57–a, Exs. A, F, X).

Accordingly, defendant's motion for summary judgment on the issue of liability must be denied.

### B. Statute of Limitations

■ It is undisputed that the product that caused plaintiff's injuries was delivered to plaintiff's employer in 1970. This action was commenced in 1990.

Under New York law, a breach of warranty claim against a manufacturer accrues on the date the manufacturer tenders delivery. N.Y.U.C.C. § 2–725(2) (McKinney's 1993). Where there is no allegation that a warranty for future performance has been made, the statute of limitations for commencing an action for breach of warranty for the sale of goods is four years from the accrual date. *Id.* §§ 2–725(1), (2); *Kern v. Frye Copysystems, Inc.*, 878 F.Supp. 660 (S.D.N.Y.1995); *Heller v. Suzuki Motor Corp.*, 64 N.Y.2d 407, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985).

Plaintiff's claim for breach of express or implied warranty expired in 1974. Accordingly, summary judgment is granted to defendant on the breach of warranty claim.

### IV. Plaintiff's Cross–Motion for Summary Judgment on the issue of Liability

■ Plaintiff's counsel asserts that his responding affidavit filed on January 2, 1996, constitutes a cross-motion for summary judgment. However, plaintiff's papers do not comply with the rules. Plaintiff failed to file and serve a notice of motion as required by Rule 7(b) of the Federal Rules of Civil Procedure and Local Rule 7.1(c), failed to submit a statement of material facts pursuant to Local Rule 56 as to which plaintiff contends there is no genuine issue to be tried, and failed to file and serve a supporting memorandum of

law with the motion papers as required by Local Rule 7.1(e).

■ Even more fundamentally, plaintiff has failed to make an evidentiary showing that would support summary judgment in his favor. In order to cast liability on defendant, plaintiff must demonstrate that the MF20 was unsafe as manufactured and marketed. In support of that position, plaintiff offers the opinion of J.B. Sevart, P.E. (Item 57–A, Ex. C). While Mr. Sevart makes a number of broad assertions regarding the MF20's safety and suggests certain corrective measures that defendant could have or should have taken, his statements are not supported by engineering records, a cost/benefit analysis or any other documentation relevant to the balancing test articulated in *Voss, supra,* 59 N.Y.2d at 109, 463 N.Y.S.2d 398, 450 N.E.2d 204. Without such an evidentiary showing, Mr. Sevart's letter is too conclusory to justify the relief requested.

For these reasons, plaintiff's cross-motion for summary judgment on liability must be denied.

## V. Defendant's Motion to Preclude

■ Defendant moves to preclude use of documents which plaintiff has produced in response to defendant's summary judgment motion, claiming that plaintiff withheld these documents from prior discovery responses. The documents at issue are contained in Item 57–a, Exs D, E (pp. 1–3 only), K, P, R, S (three documents), and Y.

Plaintiff's attorney responds that all exhibits, with the exception of E, were received by plaintiff sometime in December 1995, after prior discovery responses were made. The exhibits were filed and served on December 29, 1995, and a notice to admit was mailed to defendant's attorney on January 10, 1996. Plaintiff's attorney also states that the disputed material in Exhibit E (a transcript from another Massey–Ferguson trial) was brought to the attention of defendant's attorney on three separate occasions in March and May of 1995.

Defendant's motion to preclude and for sanctions is denied. After receiving the exhibits in December 1995, defendant waited more than nine months before filing its motion to preclude. Most of the disputed exhibits, with the exception of E and K, appear to be materials written or produced by defendant. Furthermore, the appropriate remedy here is to allow defendant to inquire into the source and completeness of the documents, not to preclude their use altogether.

### *CONCLUSION*

For the reasons set forth herein, defendant's motion for summary judgment (Item 51) is DENIED on the issue of liability for product defect, and GRANTED on the issue of breach of warranty; plaintiff's cross-motion for summary judgment (Item 57) is DENIED; and defendant's motion for order of preclusion (Item 73) is DENIED. If defendant determines that it needs additional time for discovery with respect to the exhibits for which preclusion was sought, counsel must make application to the court.

**SO ORDERED.**