William BROOKS, as Parent and
Natural Guardian of Matthew
Brooks, Plaintiff,

v.

OUTBOARD MARINE
CORPORATION,
Defendant.

No. 96–CV–797S.

United States District Court,
W.D. New York.

March 29, 1999.

Lawrence J. Strauss, Nicholas, Perot & Strauss, Akron, NY, James E. Ocasek, Cooney & Conway, Chicago, IL, A. Bruce Rozas, Mamou, LA, for William Brooks.

Walter R. Pacer, Law Office of James M. DeVoy, Buffalo, NY, for Harry Klopp.

J. Michael Shane, Shane & Franz, Olean, NY, for Andrew Scott May.

William D. Christ, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, Donna C. Peavler, Jones, Day, Reavis & Pogue, Altanta, GA, Michael B. Willian, Richard A. Chesley, Jones, Day, Reavis & Pougue, Chicago, IL, for Outboard Marine Corp.

### ORDER

SKRETNY, District Judge.

1. By Order filed with the Clerk of the Court on October 28, 1997, this Court referred this case to the Honorable Carol E. Heckman, United States Magistrate Judge, to hear and report on all dispositive motions and directed Magistrate Judge Heckman to issue a Report and Recommendation to this Court pursuant to 28 U.S.C. § 636(b)(1)(B).

2. On May 26, 1998, Defendant filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

3. By Report and Recommendation filed October 22, 1998, Magistrate Judge Heckman recommended that Defendant's Motion for Summary Judgment be denied, finding that Defendant's motion was premature in several respects and that genuine issues of material fact precluded summary judgment.

4. On November 10, 1998, Defendant filed objections to the Report and Recommendation of Magistrate Judge Heckman.

5. On January 21, 1999, this Court heard oral argument on Defendant's objections to the Report and Recommendation of Magistrate Judge Heckman.

6. This Court has carefully reviewed Magistrate Judge Heckman's Report and Recommendation and thoroughly considered the pleadings and materials submitted by the parties, as augmented by oral argument before this Court, under the standards set forth in 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 56, and the relevant case law.

IT HEREBY IS ORDERED that this Court accepts Magistrate Judge Heckman's Report and Recommendation in its entirety, including the authorities cited and the reasons given therein, and that Defendant's Motion for Summary Judgment is DENIED.

FURTHER, counsel for the parties shall appear before this Court on Wednesday, April 21, 1999, at 9:00 a.m. in Part IV, United States Courthouse, 68 Court Street, Buffalo, New York for a status conference.

FURTHER, out-of-town counsel may appear at this status conference by telephone provided that they contact my chambers at (716) 551-3086 with a telephone number at which they may be reached for the conference by 4:00 p.m. on Monday, April 19, 1999.

SO ORDERED.

## REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

This case was referred to the undersigned by the Hon. William M. Skretny for pretrial matters, and to hear and report on dispositive motions, in accordance with 28 U.S.C. § 636(b). Defendant Outboard Marine Corporation has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, it is recommended that defendant's motion be denied.

### BACKGROUND

On November 11, 1996, plaintiff William Brooks filed the complaint in this action on behalf of his minor son Matthew Brooks against Harry Klopp (d/b/a Harry's Boat Shop), Andrew Scott May and Outboard Marine for damages sustained by Matthew as a result of an accident which occurred on June 25, 1996 (Item 1). Jurisdiction was based on diversity of citizenship. On January 16, 1998, a stipulation of discontinuance was filed dismissing the action against non-diverse defendants Klopp and May, leaving Outboard Marine as the sole remaining defendant (Item 42).

The complaint sets forth the following causes of action against Outboard Marine:

1. Strict products liability;
2. Breach of implied warranty of fitness for a particular purpose;
3. Negligent design;
4. Failure to warn; and,
5. Manufacturing defect.

The complaint does not contain any specific allegations about the details of the accident, nor does it identify any specific defect in the design of the outboard motor. Instead, the details of plaintiff's claims have emerged during the course of discovery, and the undisputed facts are as follows:

On June 25, 1996, Theresa Brooks drove her 14–year–old son Matthew and his 15–year–old friend Andrew May to Harry's Bait Shop, located on Old Orchard Creek in Waterport, New York, to rent a boat for the boys to go fishing. Ms. Brooks rented a 14–foot aluminum boat equipped with an Evinrude six-horsepower outboard motor from Harry Klopp at Harry's bait Shop. Matthew and Andrew set out in the boat unsupervised.

Not long after they set out, Matthew's fishing line became entangled in the propeller of the boat's outboard motor. Matthew, who had been running the outboard, wrapped his fishing line around his right hand several times to get a better grip on the line, and reached down into the water in an attempt to free the line from the propeller. His right hand got caught in the blades of the propeller, causing traumatic amputation.

In response to Outboard Marine's first set of interrogatories, plaintiff stated:

> The motor was either in idle or forward [gear] prior to the fishing line coming into contact with the [propeller] blades. Somehow the throttle entered reverse, pulling the line with Matthew['s] right hand into the propeller blade.... At this time the plaintiff is alleging that the throttle mechanism allowed the propeller to enter from neutral or a drive gear into reverse with minimal pressure. In addition, the plaintiff is alleging that the boat motor was defective and that there was inadequate warnings [sic] affixed to the engine.
>
> Plaintiff is alleging that the boat motor was defectively dangerous due to a lack of a propeller guard.

(Responses to Interrogatory Nos. 8, 18, Item 50, Ex. E).

On April 16, 1998, after the March 31, 1998 discovery cutoff (see Item 37)[1] but prior to the filing of defendant's summary

---

1. The Amended Scheduling Order entered on November 24, 1997 (Item 37) also set June 25, 1998, as the deadline for filing dispositive motions.

judgment motion, plaintiff filed a motion for an extension of time to conduct expert witness discovery (Item 46). Plaintiff's counsel contended in this motion that he needed more time to retain a new expert because it became evident during the deposition of Robert Gilham, the expert originally retained by plaintiff, that Mr. Gilham was not qualified to provide expert testimony at trial about the design of the outboard or the cause of the accident. On May 13, 1998, this court issued a scheduling order for briefing and argument of plaintiff's motion for an extension of time, directing defendant to respond to plaintiff's motion by May 22, 1998, and scheduling argument for June 1, 1998 (Item 48).

On May 26, 1988, Outboard Marine moved for summary judgment on the following grounds:

1. Plaintiff has failed to proffer expert testimony sufficient to establish a *prima facie* case of product defect or causation;

2. The testimony of Mr. Gilham actually demonstrates that the gear shift mechanism was not defective;

3. Even if Mr. Gilham was qualified to give expert testimony, plaintiff has failed to establish that the gear shift mechanism was defective;

4. Plaintiff's propeller guard claim is preempted by federal law;

5. Plaintiff cannot establish the requisite elements of a failure to warn claim; and,

6. Plaintiff's breach of warranty claim is barred by the statute of limitations.

(*See* Item 51).

On June 1, 1998, this court heard argument on plaintiff's motion for additional time to retain an expert, and reserved decision. The court also at that time scheduled briefing and argument of defendant's summary judgment motion. Plaintiff was directed to respond to the summary judgment motion by June 15, 1998, and to submit with that response the report of plaintiff's newly-identified expert witness.

On June 15, plaintiff's counsel submitted an "Opposition Affidavit" attaching as exhibits the one-page *curriculum vitae* for Robert R. Warren, a Marine Engineering Consultant from Williamsburg, Virginia (Item 54, Ex. A), and Mr. Warren's one-page report (*id.*, Ex. B). In the concluding paragraph of the report, Mr. Warren states that "an installed propeller guard would have prevented the accident, and a properly installed and used emergency shut-off device would have either prevented the accident or lessened its severity" (*id.*). Also on June 15, 1998, plaintiff's counsel submitted a "Responding Affidavit" further detailing events pertaining to the designation and deposition of Mr. Gilham, and again requesting additional time to obtain discovery from another expert witness, Robert Swint (*curriculum vitae* attached as Ex. F to Item 55).

On June 17, 1998, this court conducted a telephone conference with counsel. The court gave defendant permission to depose Mr. Warren, but denied the request of plaintiff's counsel to depose defendant's expert pending a ruling on the summary judgment motion. Mr. Warren's deposition took place in Williamsburg on June 30, 1998.

On July 10, 1998, plaintiff submitted a memorandum in opposition to defendant's summary judgment motion. According to plaintiff, Mr. Warren's deposition testimony establishes not only his qualifications as an expert, but also that material issues of fact remain for trial as to whether defendant should have equipped the outboard with a lanyard-activated emergency ignition shut-off or "kill" switch device,[2] which

---

2. The "kill switch" device in question consists of an electrically operated independent sealed ignition shut-off switch mounted to the outboard and attached to a 3–foot long cord, or "lanyard." The lanyard generally has a belt clip, velcro strap, or other means by which it can be attached to the operator, and the kill switch is activated when the operator moves more than 3 feet from the outboard (for ex-

would have prevented or lessened Matthew's injuries.

On July 13, 1998, defendant filed a reply (Items 63 & 64), and also moved to strike plaintiffs' responding papers as untimely (Item 62).[3] Defendant contends that plaintiff is "expert shopping," that Mr. Warren's opinion relates to an entirely new theory of the case (*i.e.*, absence of a "kill switch" device), and that the opinion is not scientifically valid. Defendant also contends that, even if the court accepts Mr. Warren's qualifications and opinion, and allows plaintiff to proceed on this new theory, plaintiff has failed to establish that the absence of a kill switch device rendered the outboard motor unreasonably dangerous or proximately caused the accident.

On July 20, 1998, oral argument was held on defendant's summary judgment motion. Plaintiff's counsel advised the court on the record that plaintiff was abandoning the "defective gear shift" and "propeller guard" theories of the case, and was now proceeding solely on the theory that the outboard motor was unreasonably dangerous because it was not equipped with a lanyard-activated "kill switch" device.

### DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching its determination on a motion for summary judgment, the court must assess whether there are any material factual issues to be tried

while resolving ambiguities and drawing reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991). A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248, 106 S.Ct. 2505; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A factual dispute is material only if it might affect the outcome of the suit under governing law. *Anderson, supra; see also Mc Duffie v. Watkins Glen International, Inc.*, 833 F.Supp. 197, 200 (W.D.N.Y.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has met its burden, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci, supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In order to avoid summary judgment, the nonmoving party is under the obligation to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991). "Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing par-

---

ample, when the operator is accidentally thrown from the boat).

**3.** Defendant also claims that the papers were signed and submitted by Allen Bruce Rozas, an attorney from Mamou, Louisiana not admitted to practice in this court. However, on July 10, 1998, this court entered an order

admitting Mr. Rozas to practice *pro hac vice* (Item 61). Additionally, because this court has considered plaintiff's memorandum and affidavit in its determination of defendant's summary judgment motion. defendant's motion to strike is denied.

ty." *Coach Leatherware Co., Inc. v. Ann Taylor, Inc., supra,* 933 F.2d at 167. Stated slightly differently, when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

As discussed above, plaintiff's products liability claim in this case has been narrowed to the theory that the outboard motor was defectively designed by defendant because it did not incorporate a lanyard-activated kill switch, and that the lack of this safety device proximately caused Matthew Brooks' injuries. Correspondingly, defendant's summary judgment motion has been narrowed to the argument that Mr. Warren's reports and deposition testimony fail to establish either that the outboard motor involved in the accident was defective, or that the alleged defect— *i.e.,* lack of a lanyard-activated kill switch—was the proximate cause of Matthew's injuries.

## II. Product Defect.

In general, a plaintiff seeking recovery under New York law for injuries caused by an allegedly defective product may assert one or more of the following theories of liability: (1) negligence, (2) strict liability, (3) breach of express warranty, and (4) breach of implied warranty. *Pahuta v. Massey–Ferguson, Inc.,* 942 F.Supp. 161, 164 (W.D.N.Y.1996); *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 106, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). In this case, plaintiff's defective product claim is based on theories of both strict products liability and negligence. Under either theory, to establish a *prima facie* case the plaintiff is required to show that the defectively designed product caused his or her injury and that the defect was the proximate cause of the injury. *Voss, supra,* 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204; *Micallef v.*

*Miehle Co., Div. of Miehle–Goss Dexter, Inc.,* 39 N.Y.2d 376, 386–87, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976); 1 Weinberger, *New York Products Liability,* § 21:06.

As noted by this court in *Pahuta,* strict liability may be imposed upon a manufacturer who places a defective product on the market, and the defect causes injury, provided that (1) the product was used in the manner intended, (2) the injured user, exercising reasonable care, would not have discovered the defect and perceived its danger, and (3) the injured person would not have averted his injuries by the use of reasonable care. *Pahuta v. Massey–Ferguson, Inc., supra,* 942 F.Supp. at 164 (citing *Codling v. Paglia,* 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973)). To establish a *prima facie* case in strict liability for design defect, the plaintiff must show that the design was a substantial factor in causing the injury, and that the product was not reasonably safe as designed. *Id.* at 165 (citing *Voss, supra,* 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204). The proper standard is "whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Voss, supra.*

The determination of whether a product was defectively designed involves balancing the likelihood of harm against the utility of the product and cost of preventing the harm. Factors that may be considered include:

(1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product—that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the

product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design. *Voss, supra* at 109, 463 N.Y.S.2d 398, 450 N.E.2d 204 (citing *Rainbow v. Albert Elia Bldg. Co., Inc.*, 79 A.D.2d 287, 291, 436 N.Y.S.2d 480, 483 (4th Dept. 1981), *aff'd*, 56 N.Y.2d 550, 449 N.Y.S.2d 967, 434 N.E.2d 1345 (1982)).

■ Where the plaintiff claims negligent design, the focus shifts from the characteristics of the product to the conduct of the manufacturer. Under New York law, a manufacturer has a duty to use reasonable care in designing its product so as to avoid any unreasonable risk of harm when the product is used in the manner for which it was intended, as well as an unintended yet reasonably foreseeable use. *Micallef v. Miehle Co., supra*, 39 N.Y.2d at 385–86, 384 N.Y.S.2d 115, 348 N.E.2d 571 (citations omitted). Thus, the plaintiff must show not only that the product was defective when it left the manufacturer's hands, but also that the manufacturer could have foreseen the injury and therefore acted unreasonably in designing its product. *Voss, supra*, 59 N.Y.2d at 107, 463 N.Y.S.2d 398, 450 N.E.2d 204; *see also Robinson v. Reed–Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 480, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). A manufacturer is not obligated to design a product that is accident–proof, no matter how careless or reckless the ultimate consumer might be. *Micallef, supra* at 386, 384 N.Y.S.2d 115, 348 N.E.2d 571; *Bolm v. Triumph Corp.*, 33 N.Y.2d 151, 157, 350 N.Y.S.2d 644, 305 N.E.2d 769 (1973). If the product is designed and marketed "in a condition safe for the purposes for which it is intended or could reasonably be intended, the manufacturer has satisfied its duty." *Robinson, supra* at 481, 426 N.Y.S.2d 717, 403 N.E.2d 440.

In *Pahuta*, the plaintiff was injured while using a tractor-loader outfitted with a forklift attachment to lift a twenty-foot length of corrugated steel pipe into a dump truck. As he attempted to drop the pipe over the side of the dump truck, the pipe rolled backward over the forks and down the loader arms, landing on top of him. He sued the manufacturer of the tractor under theories of strict products liability and negligent design, claiming that his injuries would have been prevented or greatly reduced if the tractor had been equipped with safety devices, such as a rollbar or ROPS (roll-over protective structure), as standard equipment. The manufacturer moved for summary judgment on the ground that it had made such equipment available as safety options, and made the purchaser aware of those options.

This court denied the summary judgment motion, finding that the manufacturer "cannot escape liability for designing an unsafe product merely by asserting that it provided the purchaser with the option of making it safe." *Pahuta, supra*, 942 F.Supp. at 167. Instead, to be entitled to summary judgment on a product defect claim based on either strict liability of negligence, the manufacturer must initially demonstrate the absence of a genuine issue of material fact as to whether the product is reasonably safe if used in the manner intended. *Id.* (citing *Jackson v. Bomag*, 225 A.D.2d 879, 883, 638 N.Y.S.2d 819, 823 (3rd Dep't)) (summary judgment record, including affidavits and deposition testimony of several experts, reflects that defendant fulfilled its duty of reasonable care when it designed product with safety option and thereafter made such option available to consumer, "who was in the better position to assess its need in light of the use for which it was purchased"), *appeal denied*, 88 N.Y.2d 805, 646 N.Y.S.2d 985, 670 N.E.2d 226 (1996); *Fallon v. Clifford B. Hannay & Son, Inc.*, 153 A.D.2d 95, 101, 550 N.Y.S.2d 135, 138 (3rd Dep't 1989) (defendant submitted evidence in admissible form sufficient to perform *Voss* "risk-utility" analysis establishing that

product marketed without safety device was not unreasonably dangerous); *Rainbow v. Elia Bldg. Co., Inc., supra,* 79 A.D.2d at 291, 436 N.Y.S.2d 480(based upon record after six weeks of trial, jury could not have concluded that defendant's product was unreasonably dangerous when made or that it should have been made with crash bars as standard rather than optional equipment); *Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 207, 409 N.Y.S.2d 874, 876 (4th Dep't 1978) (manufacturer of product that did not "differ[ ] in any material safety feature from products marketed by the industry generally" fulfilled duty to exercise reasonable care in designing product as a matter of law when it advised purchaser that optional safety equipment was available).

■ Similarly, in this case plaintiff claims that Matthew Brooks' injuries would not have occurred, or would have been greatly reduced, if the Evinrude six-horsepower outboard motor had been sold by defendant with a lanyard-activated kill switch as standard equipment, rather than as an optional safety device. Defendant argues that it is entitled to summary judgment because plaintiff has failed to come forward with credible expert evidence to show that the outboard was not reasonably safe as designed.

Defendant has not proffered any credible evidence of its own by which the court might assess the design defect claims. Instead, defendant attacks the sufficiency of plaintiff's expert's opinions expressed in his deposition. As discussed above, plaintiff obtained an extension of the discovery period in order to designate and depose a new expert witness. The new expert—Mr. Warren—submitted a one-page "affidavit" as his expert report, in which he concluded that a propeller guard or an emergency shut-off device would have prevented or lessened the severity of the accident. The affidavit provides no discussion of the data

or other information considered by Mr. Warren in forming his opinion.[4] *See* Fed. R.Civ.P. 26(a)(2)(B). However, Mr. Warren subsequently submitted a document entitled "Initial Opinion Regarding the Matthew Brooks Boating Accident" in which he states that he considered the following information:

> Police and outboard motor test reports/videotape, Mr. Brooks' and Mr. May's depositions, OMC parts and outboard motor manuals, discussions with ATA Associates personnel, and review of American Boat and Yacht Council practices.

(Item 60, Ex. B).

Mr. Warren concluded that there were essentially three factors contributing to the accident: (1) the failure of Matthew Brooks or Andrew May to shut down the outboard, (2) the lack of a propeller guard and/or emergency shut-off device, and (3) the failure of Harry Klopp to provide the safest possible boat and motor configuration *(id)*. Mr. Warren summarized his opinion as follows:

> The 6 HP Evinrude outboard motor, as provided by the rental organization to the consumer, appeared to function within manufacturing tolerances. However, manufacturers and dealers working with rental organizations must take into account that their product will be used by a varied and diverse customer base, and that safety must accordingly be a primary consideration in outfitting. (No specific warnings or safety devices, such as those mentioned in this report, were made available to the rental consumer.)

*(Id)*. In addition, Mr. Warren testified at his deposition that, although outboard motor manufacturers were not required by law, Coast Guard regulation, or industry practice to provide a lanyard-activated emergency kill switch device as standard

---

4. Defendant did not file a motion challenging the sufficiency of plaintiff's expert report un-   der Rule 26(a)(2)(B).

equipment (Item 60, Ex. C. pp. 99–100), in his opinion defendant had a duty to notify the rental operation (*i.e.*, Harry's Bait Shop) of the availability of the device (*id.*, pp. 130–31).

Considering all of the circumstances, I find that defendant's summary judgment motion is premature in several respects. First and foremost, defendant has not met its burden at this stage of the proceedings of coming forth with "evidence in admissible form establishing a *prima facie* defense" to plaintiff's product defect claim under the standards discussed above. *Fallon v. Clifford B. Hannay & Son, Inc., supra,* 153 A.D.2d at 101, 550 N.Y.S.2d at 138. Due in large part to the problems encountered by plaintiff during the course of expert discovery, defendant has not had the opportunity to submit any evidence to rebut plaintiff's "kill switch" claim. Instead, while plaintiff's request for an extension of the discovery period was pending before this court (and prior to the previously-scheduled date for submitting dispositive motions), defendant moved for summary judgment on the "defective gear shift" and "propeller guard" claims. Now, defendant argues that Mr. Warren is not qualified to testify as an expert in the case, that his opinion does not meet the standards for establishing scientific validity set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and that in any event, Mr. Warren's testimony fails to establish that the Evinrude six-horsepower engine, as marketed without a lanyard-activated kill switch, is not reasonably safe.

Rulings on expert witness qualification or admissibility of expert opinion testimony usually occur at a considerably more advanced stage of the litigation, and on a more complete record. *See, e.g., Bogosian v. Mercedes–Benz of North America, Inc.,* 104 F.3d 472, 476 (1st Cir.1997)(ruling made at trial, after extensive *voir dire*); *Cummins v. Lyle Industries,* 93 F.3d 362, 366 (7th Cir.1996) (ruling made after extensive hearings on motion *in limine* during trial); *Meyerhoff v. Michelin Tire Corp.,* 70 F.3d 1175, 1182 (10th Cir.1995) (ruling made during trial); *Tokio Marine & Fire Insurance Co.,* Ltd., 958 F.2d 1169, 1173–74 (1st Cir.1992) (ruling made at trial); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1353, 1356 (D.Ariz.1996) (ruling made after Fed.R.Evid. 104(a) hearing on motion *in limine*), *aff'd,* 114 F.3d 851 (9th Cir.1997); *Smith v. Ford Motor Co.,* 882 F.Supp. 770, 771 (N.D.Ind. 1995) (ruling made after Fed.R.Evid. 104(a) hearing). Considering the very recent shift in the focus of plaintiff's expert testimony and theory of the case, and in the absence of any request or support for a Rule 104(a) hearing, this court will refrain from engaging in an examination of Mr. Warren's qualifications, or the scientific validity of his opinion, on the present record.

In addition, as defendant points out, the opinion elicited from Mr. Warren at his deposition is that defendant had a duty to market its six-horsepower outboard motor with a lanyard-activated kill switch because it knew, or should have known, that a considerable number of those products would be used in rental applications (*see, e.g.,* Item 60, Ex. C, pp. 75–67, 126–27, 134–35). Defendant argued in its reply brief, and at oral argument, that no such duty exists under New York law. However, no cases have been cited in support of this argument, and this court has not found any.

Defendant also argues that Mr. Warren's deposition testimony directly contradicts plaintiff's claim that the absence of a kill switch rendered the motor defective, citing the following examples:

Q: Is it your opinion, then, that every outboard engine ... that did not include a kill switch as standard equipment manufactured after 1984, is defective and unreasonably dangerous?

A: No. No.

(Warren Dep., Item 60, Ex. C, p. 75).

Q: All right. And should—is it your opinion, based upon a reasonable de-

gree of engineering probability, that the kill switch should have been made a mandatory part of all 6–horsepower Evinrude engines in 1985?

A: No.

(*Id.* at p. 127).

Q: [H]ave manufacturers of 6–horsepower tiller engines offered kill switches as standard equipment on their products at any time, to your knowledge?

A: I don't believe that the documentation would reflect that.

(*Id.* at p. 135).

According to defendant, this testimony is sufficient to establish that the engine, as manufactured and marketed by Outboard Marine, was not defective. Defendant cites *Pigliavento v. Tyler Equipment Corp.,* 248 A.D.2d 840, 669 N.Y.S.2d 747, 748 (3rd Dep't 1998), in support of this assertion. However, in *Pigliavento,* the court found that the defendant had met its burden of establishing, "[t]hrough evidentiary facts in admissible form ... which went unrefuted by plaintiff ...," the absence of genuine issues of material fact with respect to the design defect claim, entitling the defendant to summary judgment. *Id.* at 748–49, 248 A.D.2d 840. Here, as already discussed, defendant has not come forward with evidence of its own to refute plaintiff's claim that the Evinrude six-horsepower engine should have been equipped with a kill switch device for its anticipated use in the rental market.

 Finally, absent a showing of bad faith, or a showing that any prejudice suffered by defendant as a result of plaintiff's "expert shopping" cannot be cured by allowing a reasonable opportunity for expert rebuttal, this court will not impose the "severe sanction" of exclusion of plaintiff's evidence, or worse, granting summary judgment in favor of defendant, based on the present record. *Lithuanian Commerce Corporation, Ltd., supra,* 177 F.R.D. at 254.

Accordingly, I find that defendant has not met its burden of demonstrating the absence of a genuine issue of material fact as to whether the product was reasonably safe when used in the manner intended, and that defendant is not entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, it is recommended that defendant's summary judgment motion (**Item 50**) be denied.

Defendant's motion (**Item 62**) to strike plaintiff's memorandum and affidavit is denied as moot (*see* note 3, *infra* ).