William **BROOKS**, as Parent and Natural Guardian of Matthew Brooks, a Minor, Plaintiff–Appellant,

v.

**OUTBOARD MARINE CORPORATION, Defendant–Appellee.**

Docket No. 00–7460.

United States Court of Appeals, Second Circuit.

Argued Nov. 28, 2000.

Decided Dec. 6, 2000.

A. Bruce Rozas, Rozas & Rozas, Mamou, Louisiana (Lawrence J. Strauss, Nicholas, Perot & Strauss, Akron, New York, on the brief), for Appellant.

Richard A. Chesley, Jones, Day, Reavis & Pogue, Chicago, Illinois (Michael B. William, on the brief, William D. Christ, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York, on the brief), for Appellee.

Before VAN GRAAFEILAND and KATZMANN, Circuit Judges, and JONES,[1] District Judge.

## BACKGROUND

PER CURIAM:

A tragic accident occurred on June 25, 1996. Theresa Brooks rented a boat from Harry's Bait Shop in Waterport, New York for her 14–year–old son Matthew and his 15–year–old friend Andrew May. Neither boy was old enough to rent the boat or in possession of any certification or license which would allow him to legally do so. After renting the boat, Mrs. Brooks sent the two boys off to fish unsupervised. The owner of the shop also understood that the boys would use the boat unsupervised. Matthew's fishing line soon became entangled with the propeller. The motor was still running but was in neutral so that the propeller itself was not spinning. Matthew wrapped the line around his right hand to get a better grip, and reached into the water to attempt to untangle it. At that time, perhaps due to Matthew's shirt catching on the gearshift, the motor engaged in reverse and Matthew's hand was pulled into the now-spinning propeller and amputated.

William Brooks brought suit on behalf of his son Matthew against the owner of Harry's Bait Shop, Andrew May, and Outboard Marine Corporation ("OMC"), the manufacturer of the motor. Andrew May and Harry's settled with the plaintiff, and the suit continued against OMC under two theories: that the motor was defective and unreasonably dangerous due to the lack of a propeller guard and a defective gearshift mechanism which allowed only minimal pressure to cause the engine to shift into gear.

In February 1998, OMC deposed the plaintiff's expert witness. After the close of discovery on March 31, 1998, the plaintiff requested permission to extend discovery in order to obtain a new expert witness. In the meantime, OMC filed a motion for summary judgment, arguing that the plaintiff's current expert should be precluded from testifying and that summary judgment was proper on the plaintiff's two theories of liability. The motion was referred to the magistrate judge. The plaintiff then filed a curriculum vitae and one-page report of a new expert witness, Robert A. Warren. Mr. Warren's report concluded that either a propeller guard or an emergency motor shut off device, known as a "kill switch,"[2] could have prevented the accident or lessened its severity. After OMC deposed Mr. Warren in June 1998, the plaintiff then filed a response to the pending summary judgment motion. At oral argument, plaintiff's counsel abandoned the "shift mechanism" and "propeller guard" claims, conceding that the only claim on which he would proceed was the new "kill switch" claim. The magistrate recommended denying OMC's motion for sum-

---

1. The Honorable Barbara S. Jones, United States District Court for the Southern District of New York, sitting by designation.

2. A "kill switch" operates by means of a lanyard attached to both the motor and the operator of the boat; when the operator moves more than the length of the lanyard from the motor, as, for example, when the operator is thrown out of the boat, the kill switch automatically shuts off the engine.

mary judgment, finding that it was "premature" because the defendant had not properly responded to the plaintiff's new design defect theory. *See Brooks v. Outboard Marine Corp.*, 47 F.Supp.2d 380, 388 (W.D.N.Y.1999). In addition, the magistrate found it premature to rule on the admissibility of Mr. Warren's testimony, noting that such rulings are usually made on a more complete record. *See id.* The district court adopted the magistrate's recommendation.

Subsequently Mr. Warren produced a videotape demonstrating how a kill switch works, and also submitted to a second deposition. OMC then filed a second motion, moving pursuant to Fed.R.Evid. 104 for a ruling that Mr. Warren be precluded from testifying and pursuant to Fed. R.Civ.P. 56 for summary judgment. OMC argued that Mr. Warren was unsuited by education or experience to testify about the kind of boat and engine in question, and also that his conclusion that the kill switch would have activated and prevented or lessened the severity of the accident was untested and unsupported by any examination of the actual boat or motor, or the interview of any witnesses. OMC also argued that it was entitled to summary judgment because of certain alleged admissions regarding the kill switch made by Mr. Warren in his deposition.

The magistrate agreed that Mr. Warren's opinion regarding the kill switch was "unreliable and speculative, and would not assist the jury in its determination of the facts at issue in this case." The magistrate noted *inter alia* that Mr. Warren had not performed any tests on the actual boat or engine involved in the accident, conducted any interviews with any witnesses, or conducted "any actual testing to determine whether the use of a lanyard-activated kill switch would have disengaged the engine under the circumstances." As a result, the magistrate recommended precluding Mr. Warren from testifying. Without this testimony, the magistrate found that the plaintiff could not make out a prima facie

case of a design defect and recommended granting summary judgment. The district court adopted this recommendation over the plaintiff's objections. This appeal followed.

### DISCUSSION

 We review a grant of summary judgment *de novo.* *See Bonide Products, Inc. v. Cahill*, 223 F.3d 141, 143 (2d Cir. 2000) (per curiam). Brooks makes three principal arguments on appeal. First, he argues that the Supreme Court's recent decision in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), requires the party challenging the admissibility of its opponent's expert witness to first use its own expert to call the challenged expert's testimony "sufficiently into question." *Id.* at 149, 119 S.Ct. 1167. Only then, contends the plaintiff, can the district court analyze the admissibility of the testimony of the expert witness. This argument is without merit. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court instructed that the Federal Rules of Evidence require the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. 2786. The subsequent decision in *Kumho Tire* makes clear that this gate-keeping function applies not just to scientific expert testimony as discussed in *Daubert,* but also to testimony based on " 'technical' and 'other specialized' knowledge." *Kumho Tire,* 526 U.S. at 141, 119 S.Ct. 1167 (quoting Fed. R.Evid. 702). The plaintiff's argument that this gate-keeping role disappears when a proposed expert witness is not challenged by an opposing expert witness thus runs counter to the thrust of *Daubert* and *Kumho Tire.* Nowhere in either opinion is there language suggesting that testimony could only be "called sufficiently into question" by a rebuttal expert.

 Brooks also argues that the lower court erred in finding that Mr. Warren's testimony was speculative and unreliable.

**92**

Reviewing this decision under an abuse of discretion standard, *see Kumho Tire*, 526 U.S. at 142, 119 S.Ct. 1167 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)), it is evident that the district court acted well within its discretion. To note but a few shortcomings of Mr. Warren's testimony: he had never seen the actual boat or motor either in person or in photographs, had never spoken to either of the boys involved in the accident, was unaware of the dimensions of the boat and the placement of the seats in relation to the motor, did not know precisely what happened and where the boys were positioned in the time immediately preceding the accident, and had never attempted to reconstruct the accident and test his theory. The failure to test a theory of causation can justify a trial court's exclusion of the expert's testimony. *See Clark v. Takata Corp.*, 192 F.3d 750, 758–59 (7th Cir.1999); *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.1997); *Cook v. American Steamship Co.*, 53 F.3d 733, 739–40 (6th Cir.1995), *abrogated on other grounds, Joiner*, 522 U.S. 136, 118 S.Ct. 512. On appeal, the plaintiff appears to suggests that the videotape represents a test of Mr. Warren's theory, but Mr. Warren made it clear at his second deposition that the videotape was not meant to simulate the actual accident but merely was a "demonstration of how a kill switch would work." As such, it lends no reliability to Mr. Warren's theory.

*CONCLUSION*

Having determined that the district court acted within its discretion in excluding Mr. Warren's testimony, the plaintiff has no evidence in the record to support his theory that the motor had a design defect which caused the accident or increased its severity. As a result, summary judgment was properly granted. The judgment of the district court is therefore affirmed.